**SECOND DIVISION**
**MILLER, P. J.,**
**MARKLE and LAND, JJ.**

**NOTICE: Motions for reconsideration must be _physically received_ in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**May 15, 2024**

# In the Court of Appeals of Georgia

A24A0068. SHRIVER v. THE STATE.

MILLER, Presiding Judge.

Christopher Shawn Shriver appeals from the trial court's order denying his motion to dismiss this criminal case based on an alleged violation of his constitutional right to a speedy trial. Because the court did not abuse its discretion in weighing the four-factor balancing test for constitutional speedy trial claims, we affirm.

On October 16, 2017, Shriver was allegedly involved in a physical altercation with another man at an office of the Division of Family and Children Services. According to the State and five witnesses who provided written statements shortly after the incident, Shriver approached the alleged victim, punched him in the face, and bit off his ear, all in the presence of a one-year-old child. However, according to two

other witnesses who provided written statements shortly after the incident, the alleged victim threw the first punch.

Shriver was arrested shortly after the incident and released on bond the next day. Shriver was charged by indictment in December 2018 with simple battery (OCGA § 16-5-23 (a)), aggravated battery (OCGA § 16-5-24 (a)), and cruelty to children in the third degree (OCGA § 16-5-70 (d)). In March 2019, the State provided Shriver with discovery, including a list of witnesses to the incident and their written statements, addresses, and telephone numbers. Shriver waived formal arraignment and pled not guilty.

In August 2021, Shriver waived his right to a jury trial and requested a bench trial. The trial court scheduled a bench trial for September 20, 2021. However, on September 2, 2021, Shriver changed his mind and demanded a jury trial.

Shriver did not invoke his constitutional right to a speedy trial until February 7, 2023, when he filed a motion to dismiss the case based on an alleged violation of this right.[1] At a March 15, 2023 hearing on the motion to dismiss, Shriver's counsel stated that (1) the defense had attempted to contact the witnesses to the incident but had

---

[1] Shriver never filed a statutory demand for speedy trial pursuant to OCGA § 17-7-170.

only been able to contact one inculpatory witness, and (2) Shriver had completed his master's degree in mental counseling but had been unable to obtain a counseling license because of this case. The State indicated that the defense needed to provide testimony to support counsel's statements, and counsel called a private investigator to testify that the defense retained him to locate and interview the witnesses but that he had only been able to contact one inculpatory witness. Shriver, however, did not testify at the hearing.

On June 6, 2023, the trial court denied the motion to dismiss, concluding that Shriver's constitutional right to a speedy trial had not been violated. As an initial matter, the court found that the delay since Shriver's arrest was presumptively prejudicial such that the court needed to conduct the four-factor balancing test for an alleged violation of the constitutional speedy trial right — specifically, the length of the delay, the reasons for the delay, the defendant's assertion of his right, and any prejudice to him caused by the delay. Regarding the first factor, the court found that the delay of over five years since Shriver's arrest was uncommonly long and weighed against the State. Regarding the second factor, the court found that the reasons for the delay should be weighed only slightly against the State because: (a) there was no

evidence that the State had any intent to delay the case, and the delay appeared to be the result of ordinary neglect; (b) the delay during the COVID judicial state of emergency was neutral; (c) the delay after the judicial state of emergency was inevitable and occurred when the courts were inundated with trial cases; and (d) when the case had been set for a bench trial, Shriver withdrew his waiver and demanded a jury trial.

Regarding the third factor, the trial court found that the delay by Shriver in asserting his right to a speedy trial weighed strongly against him, explaining that he did not invoke his right until over four years after his indictment even though he had opportunities to do so and had been provided discovery. Regarding the fourth factor, the court found that the prejudice to Shriver should be weighed slightly for him because: (a) he had been out on bond since his arrest; (b) there was no evidence that he had suffered any unusual anxiety or concern due to the delay; and (c) both parties would face problems caused by the unavailability of witnesses and the potentially faded memories of available witnesses. In balancing the four factors and concluding that Shriver's right to a speedy trial had not been violated, the court emphasized his failure to assert his right in due course.

Shriver filed an application for interlocutory review, which this Court granted. Shriver then filed this appeal, in which he argues that the trial court abused its discretion in balancing the four-factor test. Specifically, Shriver challenges the trial court's assessment of the reasons for the delay, his assertion of his speedy trial right, and the prejudice to him. We conclude, however, that the trial court did not abuse its discretion in assessing these factors and in ultimately finding that Shriver's speedy trial right had not been violated.

The Sixth Amendment of the Bill of Rights guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy . . . trial." U. S. Const. Amend. VI. The Georgia Constitution of 1983 affirms that "[i]n criminal cases, the defendant shall have . . . a speedy trial." Ga. Const. 1983, Art. I, Sec. I, Par. XI (a).

The template for deciding all constitutional speedy trial claims under the Sixth Amendment and the Georgia Constitution is set out in the United States Supreme Court's decisions in *Barker v. Wingo*, 407 U. S. 514 (92 SCt 2182, 33 LE2d 101) (1972), and *Doggett v. United States*, 505 U. S. 647 (112 SCt 2686, 120 LE2d 520) (1992). *Ruffin v. State*, 284 Ga. 52, 55 (2) (663 SE2d 189) (2008). The analysis has two stages. Id. "First, the court must determine whether the [delay] is sufficiently long to

5

be considered 'presumptively prejudicial.' If not, the speedy trial claim fails at the threshold." (Citation omitted.) Id. "The right to a speedy trial attaches at the time of arrest or formal accusation or indictment, whichever occurs first, and we measure the delay from the time the right attaches." (Citation omitted.) *Singleton v. State*, 317 Ga. App. 637, 639 (1) (732 SE2d 312) (2012). "Where no trial has occurred, the length of delay should be calculated from the date of arrest or formal accusation to the date on which the motion to dismiss on speedy trial grounds was decided." *Phan v. State*, 290 Ga. 588, 593 (1) (a) (723 SE2d 876) (2012). Here, there is no dispute that the delay of over five-and-a-half years is presumptively prejudicial. See *Fallen v. State*, 289 Ga. 247, 248 (1) (710 SE2d 559) (2011) (three-year delay triggered presumption of prejudice).

"If . . . the delay has passed the point of presumptive prejudice, the court must proceed to the second step of the *Barker-Doggett* analysis, which requires the application of a delicate, context-sensitive, four-factor balancing test to determine whether the accused has been deprived of the right to a speedy trial." *Ruffin*, supra, 284 Ga. at 55 (2).

> [T]he four factors that form the core of the constitutional speedy trial balancing test are: (i) whether delay before trial was uncommonly long,

(ii) whether the government or the criminal defendant is more to blame for that delay, (iii) whether, in due course, the defendant asserted the right to a speedy trial, and (iv) whether he or she suffered prejudice as the delay's result.

(Citation and punctuation omitted.) Id. at 56 (2) (b).

"Speedy trial claims require trial courts to engage in a difficult and sensitive balancing process. This task is committed principally to the discretion of the trial court, and this Court has a limited role in reviewing the trial court's decision." (Citations and punctuation omitted.) *Henderson v. State*, 310 Ga. 231, 235 (2) (850 SE2d 152) (2020). Indeed, "[t]he trial court's weighing of each factor and its balancing of all four factors — its ultimate judgment — are reviewed on appeal only for abuse of discretion." *State v. Porter*, 288 Ga. 524, 526 (2) (a) (705 SE2d 636) (2011), disapproved on other grounds, *Johnson v. State*, 315 Ga. 876, 889 (3) n.11 (885 SE2d 725) (2023). "We must accept the factual findings of the trial court unless they are clearly erroneous, and we must accept the ultimate conclusion of the trial court unless it amounts to an abuse of discretion, even though we might have reached a different conclusion were the issue committed to our discretion." (Citation and punctuation omitted.) *Henderson*, supra, 310 Ga. at 235 (2).

7

1. Preliminarily, although the parties do not contest the issue, we note that the trial court properly recognized that a pre-trial delay of over five years is uncommonly long and should be weighed against the State. *Labbee v. State*, 362 Ga. App. 558, 562 (2) (a) (869 SE2d 520) (2022).

2. Shriver argues that the trial court should have weighed the reasons for the delay strongly against the State because the COVID judicial emergency only accounted for a small portion of the delay and because he did nothing to contribute to the delay. We disagree and conclude that the trial court did not abuse its discretion in assessing this second factor in the *Barker-Doggett* analysis.

"Some amount of pretrial delay is unavoidable, and even quite extended intervals between arrest or indictment and trial are sometimes both necessary and reasonable. Consequently, the reason for the delay is pivotal in evaluating the strength of a constitutional speedy trial claim, as it can color the consideration of all other factors." (Citation omitted.) *Ruffin*, supra, 284 Ga. at 59 (2) (b) (ii). "Deliberate delay to gain an improper advantage over the accused strikes at the very heart of the speedy trial guarantee and is thus weighted heavily against the government in the

*Barker-Doggett* balancing process." (Citation and punctuation omitted.) Id. Other reasons for delay include

> overcrowded dockets, the government's failure to provide for sufficient numbers of judges, prosecutors, or indigent defense counsel, neglect by the prosecution or other government agents, mere convenience of the prosecution, or the desire to avoid the expense of separate trials for two defendants involved in the same crime. Each of these reasons must be counted against the government in the *Barker-Doggett* analysis, though less heavily than delay designed to sabotage the accused's case.

(Citation omitted.) Id. at 60 (2) (b) (ii). "[W]here no reason appears for a delay, we must treat the delay as caused by the negligence of the State in bringing the case to trial." (Citation omitted.) Id. at 61 (2) (b) (ii).

Here, there is no evidence that the State intentionally delayed prosecuting Shriver. In fact, a substantial portion of the delay was caused by circumstances beyond the State's control, and a slight portion of the delay was caused by Shriver himself. Specifically, in March 2020 the Chief Justice of the Supreme Court of Georgia issued an order declaring a statewide judicial emergency, pursuant to OCGA § 38-3-61, that suspended jury trials in light of the COVID pandemic. *Labbee*, supra, 362 Ga. App. at 559-560. The judicial emergency order thereafter was extended several times, and in

March 2021 the prohibition on jury trials was lifted. Id. at 560 n.3.[2] The pandemic was a "catastrophic and unique event" beyond the control of the government or the defense, and neither party is responsible for the delays caused by it. Id. at 566 (2) (b) (iv). Thus, the State cannot be faulted for the periods in 2020 and 2021 during which no jury trials were held, and the delays caused by overcrowded dockets following the resumption of jury trials are not entitled to significant weight. See *State v. Adams*, 364 Ga. App. 864, 868 (2) (b) (i) (876 SE2d 719) (2022) (delay of just under 16 months attributable to the COVID judicial emergency was not weighed against either party). Further, Shriver slightly contributed to the delay in this case by waiving his right to a jury trial only to change his mind and demand a jury trial. "[W]hen any portion of a delay in trial is caused by or at the behest of defense counsel, it should not be weighed against the State." *Williams v. State*, 290 Ga. 24, 26 (2) (717 SE2d 640) (2011).

Given that a substantial portion of the delay was not attributable to the State, and in the absence of evidence that the State intentionally delayed prosecuting Shriver, we will not disturb the trial court's decision to weigh this second factor only

---

[2] The judicial emergency order expired in June 2021. *State v. Adams*, 364 Ga. App. 864, 868 (2) (b) (i) (876 SE2d 719) (2022).

slightly against the State. See *State v. Pickett*, 288 Ga. 674, 676 (2) (c) (2) (706 SE2d 561) (2011) ("[T]he trial court correctly attributed the delay to the government and correctly weighed the factor against the State only benignly, as the delay was due to an overcrowded docket and not the result of a deliberate attempt to delay the trial in order to hamper the defense.") (citation and punctuation omitted); *Labbee*, supra, 362 Ga. App. at 567 (2) (b) (iv) (trial court did not abuse its discretion in finding that the delay in defendant's trial resulting from the COVID pandemic was a neutral factor).

3. Shriver further argues that the trial court abused its discretion in strongly weighing against him the fact that he did not demand a speedy trial and that his failure to assert his speedy trial right should not matter given the extended delay in this case. We disagree.

> Pretrial delay often works to the advantage of the accused, because the government is constitutionally required to prove each element of its case beyond a reasonable doubt. Thus, in the main, the dimming of memories and loss of evidence that inevitably accompany the passage of time tend to help rather than hinder the accused, with the result that delay is not an uncommon defense tactic. Many criminal defendants, particularly when they have been released on bond pending trial, would therefore prefer to drag out the process as long as possible. The Sixth Amendment and the corresponding provision of the Georgia Constitution place the

burden squarely on the government to ensure that individuals accused of crime are brought to trial in a timely manner. Nevertheless, the accused bears some responsibility to invoke the speedy trial right and put the government on notice that he or she, unlike so many other criminal defendants, would prefer to be tried as soon as possible.

The accused is not required to demand a speedy trial at the first available opportunity, for the [United States] Supreme Court has expressly rejected the demand-waiver approach to the constitutional speedy trial right. Even so, *a defendant who fails to assert the right at any point in the trial court will have an extremely difficult time establishing a violation of his or her constitutional right to a speedy trial.*

(Emphasis supplied; citations and punctuation omitted.) *Ruffin*, supra, 284 Ga. at 62 (2) (b) (iii). "In order to invoke the right, the accused need not file a formal motion, though that is certainly sufficient. Moreover, invocation of the speedy trial right need not await indictment, information, or other formal charge; the accused can begin demanding that the right to a speedy trial be honored as soon as he or she is arrested." (Citations and punctuation omitted.) Id. at 62-63 (2) (b) (iii).

Despite being represented by the same attorney throughout the case, Shriver did not assert his constitutional right to a speedy trial at any point between his October 2017 arrest and his February 2023 motion to dismiss, and he never filed a statutory

demand for speedy trial. "Because delay often works to the defendant's advantage, this factor is afforded strong evidentiary weight." (Citations and punctuation omitted.) *Phan*, supra, 290 Ga. at 595 (1) (c). Indeed, the Supreme Court of Georgia has explained that "[a] delay of over five years typically would warrant this factor being weighed *heavily* against the defendant." (Emphasis in original). *Pickett*, supra, 288 Ga. at 677 (2) (c) (3).

Shriver's argument that his failure to assert his speedy trial right should not matter given the extended delay in his case is contrary to well-established law. A violation of this right is not automatically established by virtue of an extended delay, because "none of the[] four factors is either a necessary or sufficient condition to the finding of a deprivation of the right." (Citation and punctuation omitted.) *Harris v. State*, 284 Ga. 455, 455 (667 SE2d 361) (2008); see also *Fallen*, supra, 289 Ga. at 248 (1) ("[T]he presumptive prejudice arising from delay cannot alone carry a Sixth Amendment claim without regard to the other *Barker* criteria. Instead, it is part of the mix of relevant facts, and its importance increases with the length of delay.") (citations and punctuation omitted).

Thus, the trial court did not abuse its discretion in strongly weighing against Shriver his failure to assert his speedy trial right for more than five years. See *Rucker v. State*, 315 Ga. 568, 581 (2) (c) (883 SE2d 790) (2023) (trial court acted within its discretion in weighing the third factor heavily against defendant, where he waited over a year after he was indicted to assert his constitutional right to a speedy trial, and he never filed a statutory speedy trial demand although he was represented by counsel throughout the case); *Brannen v. State*, 274 Ga. 454, 456 (553 SE2d 813) (2001) (where defendant filed no statutory demand for speedy trial and did not raise his constitutional right to a speedy trial in the 51 months between his arrest and his motion to dismiss, this factor was correctly weighed strongly against him).

4. Lastly, Shriver argues that the trial court abused its discretion in finding that the delay's prejudicial effect on him was minimal for the following reasons: no exculpatory witnesses can be located while an inculpatory witness was located; even if the exculpatory witnesses could be located their memories will be faded; and he cannot obtain a counseling license due to this case. We will not disturb the court's assessment of the prejudice factor.

> As for the final factor in our analysis, whether [Shriver] suffered prejudice as a result of the delay, there are three factors to consider:

14

whether there has been oppressive pre-trial incarceration; the anxiety and concern of the accused; and the possibility of harm to the accused's defense. Of these forms of prejudice, the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system.

(Citations and punctuation omitted.) *Harris*, supra, 284 Ga. at 456.

(a) Shriver has not suffered any oppressive pre-trial incarceration, as he was released on bond the day after his arrest. See *Singleton*, supra, 317 Ga. App. at 643 (2) (d) (i) (no oppressive pre-trial incarceration where defendant spent only three days in jail following his arrest).

(b) Although Shriver's counsel stated at the hearing on the motion to dismiss that Shriver could not obtain a counseling license due to this case, the State indicated that the defense needed to provide testimony to support counsel's statement, and the only evidence presented at the hearing consisted of the private investigator's testimony regarding his attempts to locate witnesses. In *Porter*, supra, 288 Ga. at 530 (2) (c) (4), the Supreme Court of Georgia explained that "no actual evidence or appropriate proffer" established the death of the defendant's witnesses where the defendant "did not testify at the hearing, but merely informed the trial court orally,

15

apparently from his seat at counsel table, that two of his witnesses had died." See also *Howard v. State*, 307 Ga. App. 822, 828 (2) (d) (706 SE2d 163) (2011) (stating that the only evidence offered by defendant to prove that his case had caused him great anxiety and concern constituted hearsay and therefore was of no probative value, and that he could have mitigated any anxiety and concern by asserting his right to a speedy trial sooner). Thus, Shriver has made no showing of undue anxiety or concern.

(c) Regarding the possibility of harm to Shriver's defense, we will not disturb the trial court's finding that both parties would face problems caused by the unavailability of witnesses and the potentially faded memories of available witnesses. We simply cannot say that the court abused its discretion, made a clearly erroneous factual finding, or misapplied the law. See *Porter*, supra, 288 Ga. at 526 (2) (a) (where the trial court has clearly erred in its factual findings or misapplied the law, the deference owed its ruling is diminished).

Despite finding that Shriver had not suffered oppressive pre-trial incarceration or undue anxiety or concern, the trial court ultimately weighed the prejudice factor in Shriver's favor, indicating a recognition of the difficulties he faced due to the apparent disappearance of the two exculpatory witnesses. And in assessing prejudice, the court

was permitted to credit the evidence that four inculpatory witnesses could not be located. See *Brannen*, supra, 274 Ga. at 458 ("Although we agree that [the defendant] is disadvantaged by her inability to examine [the dead witness] at trial, the State is also prejudiced by its inability to cross-examine the witness and put before the jury the alternate theory that [the victim] was threatening suicide rather than threatening [the defendant's] life."). And both parties will likely face problems caused by the dimmed memories of available witnesses. "Delay is not an uncommon defense tactic. As the time between the commission of the crime and trial lengthens, witnesses may become unavailable or their memories may fade. If the witnesses support the prosecution, its case will be weakened, sometimes seriously so. And it is the prosecution which bears the burden of proof." (Citation omitted.) Id. Although we may have given more weight to the possibility of harm to Shriver's defense if we were tasked with making the assessment in the first instance, it is not our job to do so. *State v. Buckner*, 292 Ga. 390, 391 n.3 (738 SE2d 65) (2013). And given the absence of oppressive pre-trial incarceration or undue anxiety or concern, we cannot say that the trial court abused its discretion in weighing the prejudice factor only slightly for Shriver.

17

5. Considering the four factors together, we conclude that the trial court did not abuse its discretion in finding that there was no violation of Shriver's constitutional right to a speedy trial. As explained above, we will not disturb the court's analysis of the four factors. And when the factors that weigh in Shriver's favor are considered along with his failure for over five years to invoke his speedy trial right and the fact that a substantial portion of the delay was caused by the COVID pandemic and other innocuous reasons, the court was within its discretion in denying the motion to dismiss.

"We weigh the relative prejudice resulting from the missing witness[es] against [Shriver's] decision to forego the election to seek a speedy trial." *Brannen*, supra, 274 Ga. at 458. "We do not condone the considerable delay in bringing [Shriver's] case to trial, and we are especially concerned by the year[s] of apparent inactivity in his case. Nevertheless, [Shriver's] belated assertion of his constitutional right to a speedy trial weighs heavily against him." *Howard*, supra, 307 Ga. at 829 (2) (e). Thus, Shriver's assertion of his right so "late in the process" is "[c]entral to our decision to affirm the trial court's judgment." *Ruffin*, supra, 284 Ga. at 66 (3); see also *Porter*, supra, 288 Ga. at 532 (2) (d) ("If all four factors point in one direction, the result of

weighing them together will be clear, but otherwise, under the circumstances of a particular case, any one factor may be weighty enough to tip the balance.").

> However, the clock is still ticking. It has now been well over [five] years since [Shriver] was indicted, and the vigor and formality with which he has pressed his constitutional speedy trial claim are no longer subject to challenge. The District Attorney should be aware that any further delay in bringing [Shriver] to trial not attributable to [him] runs a serious risk of violating [his] right to a speedy trial guaranteed by the Sixth Amendment and the Georgia Constitution. If that were to happen, then under controlling United States Supreme Court precedent, dismissal of the charges against [Shriver] would be constitutionally required.

*Ruffin*, supra, 284 Ga. at 66 (3).

For the foregoing reasons, we affirm the denial of Shriver's motion to dismiss.

*Judgment affirmed. Markle and Land, JJ., concur.*